IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ANATOMIC AND CLINICAL LABORATORY ASSOCIATES, P.C. et al., | ) ) ) | |
| Plaintiffs, | ) ) | NO. 3:22-cv-00767 |
| v. | ) ) | JUDGE RICHARDSON |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' motion to dismiss or transfer (Doc. No. 40, "Motion"), which is accompanied by a supporting memorandum (Doc. No. 41).[1] Plaintiff[2] filed a response (Doc. No. 50), and Defendants filed a reply (Doc. No. 55). For the reasons stated herein, the Motion will be granted in part and denied in part. Specifically, the Motion will be granted insofar as this action shall be transferred to the Eastern District of Pennsylvania.[3] The Motion will be denied as moot with respect to Defendants' request to dismiss the Complaint for failure to state

---

[1] Because the Court ultimately need consider only Defendants' request to transfer the action, the Court refers to the motion to transfer herein as the "Motion."

[2] Hereinafter, "Plaintiff" refers to Anatomic and Clinical Laboratory Associates, P.C. The claims of Plaintiff Cumberland Pathology Associates, PLLC's ("Cumberland") have been stayed pending arbitration. (Doc. No. 39).

[3] Notably, the motion to transfer requests transfer of the entire action, which should have put Cumberland on notice that the Court may transfer Cumberland's claims along with the claims of Anatomic Labs. Moreover, the Court is of the opinion that transfer likely will not prejudice Cumberland, given that there may well be little for a federal district court to rule on with respect to Cumberland's claims once arbitration is complete. Thus, notwithstanding this Court's prior Order to stay Cumberland's claims pending arbitration (Doc. No. 39), the Court grants the motion to transfer as to the entire action.

a claim upon which relief can be granted and failure to comply with Rule 8 of the Federal Rules of Civil Procedure.

BACKGROUND[4]

Plaintiff is corporation that provides pathology services to patients, including individuals who are customers of Defendants. (Doc. No. 1 at 4).[5] Plaintiff has a contract (the "MPI Agreement") with MultiPlan, Inc. (*Id.* at 2). Under the MPI Agreement, Plaintiff agreed "to provide services to customers of MultiPlan's [c]lients, and to accept reimbursement from the [c]lients for those services at a negotiated rate set forth in [Plaintiff's] agreement with MultiPlan." (*Id.* at 8). Defendants are MultiPlan's clients. Thus, Plaintiff is contractually obligated to provide services to Defendants' customers and accept reimbursement from Defendants. (*Id.*). In exchange for Plaintiff's promise to MultiPlan to provide its services to the customers of MultiPlan's clients, MultiPlan promises under the MPI Agreement to require its clients (including Defendants) to compensate Plaintiff pursuant to the terms in the MPI Agreement. (*Id.*).

---

[4] The Court takes all relevant facts from the Complaint at Doc. No. 1. Although the law on this point is not necessarily as developed as it could be, this Court has indicated that in considering a motion to transfer venue, the [factual] allegations of the complaint should be taken as true. *See Sardeye v. Wal-Mart Stores E., LP*, No. 3:18–CV–01261, 2019 WL 4276990, at *1 (M.D. Tenn. Sept. 10, 2019). Another court has stated, more precisely, that in considering a motion to transfer venue, the court accepts all well-pleaded [factual] allegations in the complaint as true unless controverted by the defendants' affidavits. *See Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 900 (N.D. Ill. 2001). The Court believes this to be the appropriate standard and uses it accordingly.

[5] When citing to a page in a document filed by one of the parties, the Court endeavors to cite to the page number ("Page ___ of ___") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/filer of the document.

Defendants also have their own contract with MultiPlan (the "Client Agreement").[6] (*Id.*).

The Client Agreement contains a requirement that Defendants reimburse Plaintiff pursuant to the

---

[6] Defendants clarify that they have two relevant contracts with MultiPlan—the Master Services Agreement (Doc. No. 43–2, "MSA"), which includes the forum-selection clause at issue, and the Statement of Work No. 1 ("Doc. No. 43–3, "SOW"), the terms and conditions of which are incorporated into the MSA. Although neither of these documents is attached to Plaintiff's Complaint, both are attached to Defendants' Motion, and Defendants suggest that the MSA is part of the "Client Agreement" that Plaintiff refers to in its Complaint (*see* Doc. No. 1 at ¶¶ 40, 42, 93–100).

On a motion to dismiss, a court may consider documents which the defendant attaches to its motion "if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.* Similar principles apply to a motion to transfer, whereby the court may "consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings." *See Scepter, Inc. v. Nolan Transp. Grp., LLC*, 352 F. Supp. 3d 825, 828 n.1 (M.D. Tenn. 2018).

Although Plaintiff does not specify or attach the precise documents that constitute the "Client Agreement" mentioned in its Complaint, the Complaint describes the "Client Agreement" as an agreement entered into by Defendants with MultiPlan that required Defendants to reimburse Plaintiff pursuant to Plaintiff's MPI Agreement. (*See* Doc. No. 1. at ¶¶ 40, 42). Importantly, Plaintiff does not directly assert that the MSA was not part of the "Client Agreement" described in its Complaint, or that the version attached to Defendants' Motion is inauthentic, as one might expect Plaintiff to contend if it sincerely believed that such was the case. Nor does Plaintiff contest that the Client Agreement contains a forum-selection clause as claimed by Defendants or that anything has happened to supersede or remove that forum-selection clause. Instead, Plaintiff argues generally that the Court must disregard all documents attached to Defendants' Motion insofar as they either are used by Defendants to contradict the Complaint or raise material questions of fact (which the Court must resolve in Plaintiff's favor). But Plaintiff has not explained *how* the MSA actually contradicts the Complaint or raises questions of fact that are material to Defendants' request to transfer venue, such that the Court should not consider the forum-selection clause contained within it in deciding the Motion. Plaintiff attempts to create a material dispute of fact by merely speculating that other documents not attached to Defendants' Motion, such as an amendment, *may* have amended the MSA in some material way and by pointing out that the MSA states that it terminates in 2019. But these facts do not contradict allegations in the Complaint and they have no bearing on the authenticity of the MSA or the Court's belief that the MSA (and, for that matter, the SOW) are in fact part of the Client Agreement referenced in Plaintiff's Complaint. More to the point, these assertions have no impact on the legitimacy or applicability of the forum-selection clause included in the MSA, which is effectively the only portion of the MSA that is relevant to the part of the Motion that the Court addresses herein.

Were the Court to exclude the MSA from its consideration on the Motion merely because of Plaintiff's conclusory allegations that the MSA *may* be the incorrect contract or *may* have been amended by other (unidentified) documents, future plaintiffs could survive a motion to transfer by intentionally failing to attach a relevant document and then questioning its legitimacy (without a meaningful basis for doing so) when it is subsequently attached to a defendant's motion to transfer. On this very basis, the Third Circuit has held that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v.*

schedule (and other requirements) contained in the MPI Agreement. (*Id.*). The requirement that Defendants reimburse Plaintiff under the Client Agreement (to which Defendants and MultiPlan are parties), appears to be the basis of Plaintiff's theory that it is an intended third–party beneficiary of the Client Agreement.

Defendants have not reimbursed Plaintiff consistent with their obligations of the Client Agreement since October or November 2021.[7]

On September 30, 2022, Plaintiff and Cumberland filed a Complaint containing various claims against Defendants. Plaintiff was named as a claimant in the following counts (some of which were brought jointly with Cumberland):

> Count Three: Breach of Contract (the Client Agreement) as Third-Party Beneficiary
>
> Count Four (Pled in the alternative to Count Three): Breach of Implied in Fact Contract
>
> Count Five: Breach of Implied Covenant of Good Faith of Fair Dealing[8]
>
> Count Six (Pled in the alternative to the breach-of-contract counts): Unjust enrichment
>
> Count Seven: Declaratory judgment
>
> Count Eight: Injunctive relief

---

*White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court finds this reasoning even more justifiable when considering a motion to transfer, given that the stakes are obviously lower and that the Court has wide discretion in deciding whether transfer is appropriate. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994).

The Court therefore finds that there is no actual dispute that the MSA (and, for that matter, the SOW attached to Defendants' Motion are documents referenced in the Complaint (as part of what the Complaint calls the "Client Agreement"). Accordingly, the MSA and the SOW are sufficiently "embraced by the pleadings," such that the Court may properly consider the MSA on the Motion. *Scepter*, 352 F. Supp. 3d at 828 n.1. The Court thus considers both the MSA and the SOW as part of the Client Agreement.

[7] The Court will forego discussing the reasons why Defendants have allegedly stopped making these reimbursements, because they are immaterial to the decision of whether to transfer the case.

[8] As the undersigned has repeatedly explained (usually with details that he can omit here), breach of the covenant of good faith and fair dealing is not actually a separate cause of action. *See, e.g.*, *Thornton v. Dutch Nats. Processing*, LLC, 629 F. Supp. 3d 777, 793 (M.D. Tenn. 2022). But Count Five nevertheless is noteworthy because it reiterates Plaintiff's claim that it is a third-party beneficiary of the Client Agreement. (Doc. No. 1 at 19).

On December 12, 2022, Defendants filed the Motion, requesting that the Court either transfer the entire action to the Eastern District of Pennsylvania pursuant to its authority under 28 U.S.C. § 1404(a) or dismiss the Complaint under Federal Rules of Civil Procedure 8 and 12(b)(6). (Doc. No. 40).

<u>STANDARDS FOR MOTIONS TO TRANSFER VENUE</u>

The standard for transfer of venue to a more convenient forum is found in Section 1404, which provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *see also TailGate Beer, LLC v. Boulevard Brewing Co.*, No. 3:18–cv–00563, 2019 WL 2366948, at *7 (M.D. Tenn. June 5, 2019). "The burden rests with the moving party to establish that venue should be transferred." *Winnett v. Caterpillar, Inc.,* 3:06–cv–00235, 2006 WL 1722434, *2 (M.D. Tenn. June 20, 2006). Unless the balance is strongly in favor of the defendant, a plaintiff's choice of forum should rarely be disturbed. *TailGate Beer, LLC*, 2019 WL 2366948, at *7. A defendant must make a clear and convincing showing that the balance of convenience strongly favors the alternate forum. *Id*.

In reviewing a motion to transfer, a court balances case-specific factors, including the private interests of the parties and public-interest concerns, such as systemic integrity and fairness. *Id*.; *see also Ingram Barge Co., LLC v. Bunge N. Am., Inc.*, 455 F. Supp. 3d 558, 569 (M.D. Tenn. 2020). A district court "has broad discretion to grant or deny a motion to transfer [a] case." *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994), cited in *Sardeye v. Wal-Mart Stores East, LP*, Case No. 3:18–cv–01261, 2019 WL 4276990, at *3 (M.D. Tenn. Sept. 10, 2019).

"Although a plaintiff's choice of forum is generally given deference, that choice may be defeated . . . ." *Harris v. Parker*, No. 3:20–cv–01110, 2021 WL 229651, at *3 (M.D. Tenn. Jan.

22, 2021). One way in which the choice of forum can be defeated is by an enforceable forum-selection clause in a contract between the parties. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59–60 (2013) ("*Atlantic Marine*"). That is to say, a forum-selection clause "may be enforced through a motion to transfer under § 1404(a)." *Id.* at 59. "Section 1404(a) therefore provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Id.*

When a court determines that there is a valid forum-selection clause, the court should shift the traditional § 1404(a) analysis as directed by the Supreme Court in *Atlantic Marine*, as will be discussed in more detail below.

<u>DISCUSSION</u>

**1. Plaintiff is bound by the forum-selection clause**

The forum-selection clause of the Client Agreement is at the center of Defendants' request to transfer this action. The clause reads as follows:

> This Agreement will be governed by and interpreted in accordance with the laws of the Commonwealth of Pennsylvania, without regard to its conflict of laws provisions. Each party irrevocably accepts the exclusive Jurisdiction of the United States District Court for the Eastern District of Pennsylvania unless that Court declines or lacks jurisdiction, then the courts of the Commonwealth of Pennsylvania, Philadelphia County Court of Common Pleas, Commerce Court. Supplier agrees that Company or any Affiliated Company may enforce a judgment, lien, injunction or other remedy or relief against supplier in any court of competent jurisdiction.

(Doc. No. 43–1).[9] Defendants argue that Plaintiff is bound by the clause because (in Defendants' view) Plaintiff is closely related to Defendants and MultiPlan (the parties to the Client Agreement),

---

[9] The language cited above comes from the MSA (Doc. No. 43–1), which the Court has deemed part of what the Complaint calls the "Client Agreement" and has determined it will consider for purposes of the Motion. Plaintiff also includes the entire clause excerpted here in its Response to the Motion, further convincing the Court that Plaintiff does not actually dispute either the authenticity of the MSA or its being encompassed as part of the Client Agreement. (Doc. No. 50 at 9–10).

and because Plaintiff's breach-of-contract claims necessarily implicate terms of the Client Agreement. By contrast, Plaintiff argues that it cannot be bound by the forum-selection clause in the Client Agreement, as it is not a party-signatory to the Agreement. At the outset, the Court notes that the parties do not appear to dispute that Sixth Circuit, rather than Third Circuit case law, governs whether the action should be transferred. The Court therefore relies primarily on the case law from and within the Sixth Circuit.

Judge Trauger confronted similar facts to those present here in *Regions Bank v. Wyndham Hotel Management, Inc.*, No. 3:09–1054, 2010 WL 908753 (M.D. Tenn. Mar. 12, 2020). *Regions Bank* involved the failure of a hotel in Chicago. *See id.* at *1. The holding company for the hotel, Drake Oak Brook Holdings LLC ("DOBH"), had entered into a Hotel Management Agreement ("HMA") with Wyndham Hotel Management ("Wyndham"). *See id.* Regions Bank had provided the loan that funded the acquisition of the hotel. *See id.* As part of the loan, Regions Bank and DOBH entered into an Assignment of Management Agreement ("Assignment Agreement"), in which DOBH assigned its rights as provided in the HMA to Regions Bank. *See id.* at *2. In brief, following the failure and shuttering of the hotel, Regions Bank filed a suit against Wyndham for several issues arising out of the failure. *See id.* at *3. Notably, Regions Bank did not seek damages under the HMA and instead relied on the alleged existence of a purported agreement between itself and Wyndham. *See id.* at *3–*4. The question for the Court was whether Wyndham could enforce the forum-selection clause contained in the HMA, to which Regions Bank was not a signatory, against Regions Bank in the civil action. *See id.* at *5.

Regions Bank argued that it was not bound by the forum-selection clause, because it was not a signatory to the HMA, especially since the forum-selection clause specifically states that the "Parties" are bound by the clause. *See id.* But as Judge Trauger explained, "a non-signatory to a

contract may be bound by a forum selection clause in that contract if the non-signatory is sufficiently 'closely related' to the dispute such that it becomes 'foreseeable' that the non-party will be bound by the clause."[10] *See id.* In summarizing the relevant (though somewhat sparse) case law, Judge Trauger explained that the court in *Highway Commercial Services., Inc. v. Zitis*, 2008 WL 1809117, at *4 (S.D. Ohio Apr. 21, 2008), "listed typical examples of where a sufficiently close relationship may be found . . . ." *See id.* This list included "where the non-signatory is in an agency relationship with one of the parties to the contract with a forum selection clause, *where the non-signatory is a third-party beneficiary of the contract*, or where a corporation is a party to a contract with a forum selection clause and one of the officers, directors or shareholders of the corporation is engaged in litigation under that contract." *See id.* at *6 (emphasis added).

Judge Trauger then observed that

[i]n sum, it is clear from these cases that courts considering this question of whether a non-signatory may be bound by a forum selection clause take a common sense, totality of the circumstances approach that essentially inquires into whether, in light of those circumstances, it is fair and reasonable to bind a non-party to the forum selection clause. As noted above, this approach places emphasis on whether it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contract dispute. The question, then, is whether, in light of all of the circumstances of this case and what should have been reasonably foreseeable to Regions [Bank], it is fair and reasonable to conclude that Regions [Bank] is sufficiently "closely related" to the parties to the HMA that Regions [Bank] should be bound by the forum selection clause. On this standard, the court concludes that Regions [Bank] should be so bound.

---

[10] The undersigned has suggested that perhaps, under certain circumstances, a non-signatory can be bound by a forum-selection clause *even absent* this kind of close relationship. *See Palinode, LLC v. Plaza Servs., LLC*, No. 3:20–CV–00807, 2021 WL 4460509, at *7 (M.D. Tenn. Sept. 28, 2021). But the circumstances he contemplated are not present in this case, and so he declines to further explore that suggestion herein.

*See id.* at *6. Judge Trauger observed that the Assignment Agreement, to which Regions Bank was a signatory, explicitly incorporated the HMA, and that Regions Bank agreed to receive considerable rights under the HMA as the assignee. Based on these observations, Judge Trauger was satisfied that Regions Bank was sufficiently closely related to the parties[11] of the HMA to be bound by the forum-selection clause contained therein. *See id.* at *7.

Defendants, seeking to satisfy their burden of establishing that the circumstances of the case support a finding that transfer is appropriate, argue that *Regions Bank* favors Defendants' position. The Court agrees. In *Regions Bank*, Judge Trauger found that Regions Bank was bound by the forum-selection clause in the HMA—a contract to which Regions Bank was not a signatory—despite the fact that Regions Bank neither explicitly sought damages nor pleaded a cause of action pursuant to the terms of the HMA. *See Regions Bank*, 2010 WL 908753, at *6. And compared to the circumstances in *Regions Bank*, the facts here present an even stronger case for finding that the non-signatory (Plaintiff) is bound by the forum-selection clause at issue. As discussed in detail, insofar as the merits are concerned, Plaintiff seeks damages on the grounds that it is a third-party beneficiary to the Client Agreement. Unlike in *Regions Bank* in which

---

[11] The Court pauses here to clarify that under the legal standard laid out by Judge Trauger in *Regions Bank*, and as cited elsewhere in the case law, the relevant inquiry when determining whether a non-signatory is bound by a forum selection clause is whether the non-signatory is "sufficiently 'closely related' to the *dispute* such that it becomes 'foreseeable' that the non-party will be bound by the clause." *Regions Bank v. Wyndham Hotel Mgmt., Inc.*, No. 3:09-1054, 2010 WL 908753, at *5 (M.D. Tenn. Mar. 12, 2010) (emphasis added). In *Regions Bank*, Judge Trauger applied a slightly different, but related, standard in concluding that Regions was sufficiently closely related to the "*parties* to the [contract,]" such that Regions should be bound by the forum-selection clause. *Id*. at *6. Instead of analyzing the relationship between Plaintiff and the parties to the Client Agreement, the Court here will inquire as to the closeness of the relationship between Plaintiff and the *dispute* that has arisen in this case, as the Court considers this approach more consistent with the standard articulated in the case law. Focusing on the relationship between Plaintiff and the dispute, rather than the relationship between Plaintiff and the parties to the Client Agreement, makes it even clearer to the Court that Plaintiff is bound by the agreement. Plaintiff, after all, is obviously closely related to the dispute it raises (via this lawsuit) regarding Defendants' modified reimbursement policy, and it would have been foreseeable when Defendants entered into the Client Agreement that Plaintiff would be bound by the forum selection clause if any problems, such as the modification of Defendants' reimbursement policy, arose from the Client Agreement.

Regions Bank's claims did not necessarily implicate the HMA, Plaintiff's route to success on the merits is through a favorable interpretation of the Client Agreement. Plaintiff therefore appears to have an even closer relationship to the to the dispute than Regions Bank did to the parties of the HMA.

Plaintiff's attempt to distinguish *Regions Bank* is unpersuasive. Plaintiff contends that the "arising under" language present in the clause at issue in *Regions Bank* makes the forum-selection clause at issue in this case materially different than the one in *Regions Bank*. (Doc. No. 50 at 16). But this distinction is not material to the present analysis. The distinction relates to *what claims* are within the scope of the forum-selection-clause, not *who* is bound by it, which is the issue currently before the Court—and Plaintiff does not explain why the latter (current) issue turns in some way on the former issue. Thus, the distinction on which Plaintiff relies here does not serve to impair the persuasiveness of *Regions Bank* regarding the current issue.

Moreover, in determining whether Regions Bank was bound by the forum-selection clause, Judge Trauger did not seem to rely on the "arising under" language contained in the relevant clause. Given that Judge Trauger seemingly did not rely on this fact in her analysis, the Court does not view this distinction as a material difference that renders less persuasive or applicable Judge Trauger's cogent analysis in *Regions Bank*. Instead, the Court finds the relevant facts in *Regions Bank* to be analogous to those relevant to the Motion, and in turn, it finds that the analysis of that case has persuasive import here.

In addition to relying on *Regions Bank*, Defendants point out that Plaintiff's contract claims are premised on the theory that it is an intended third-party beneficiary to the Client Agreement between Defendants and MultiPlan. As a purported intended third-party beneficiary, Plaintiff therefore seeks to benefit from the terms of the Client Agreement despite the fact that it is not a

signatory to the Client Agreement. By arguing that it is an intended third-party beneficiary, Plaintiff has placed the terms of the Client Agreement as well as its relationship to Defendants and MultiPlan in dispute; this strongly suggests that Plaintiff should be bound. *See In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 70 (3d Cir. 2018) ("[A]n eyes-wide-open plaintiff—one who gets the benefit of the parties' bargain and has the corresponding right to sue—would be bound by the terms of the forum selection clause just as the signatories would be."). Defendants correctly assert that any court resolving Plaintiff's claim will necessarily have to interpret the terms of the Client Agreement. It was therefore foreseeable that Plaintiff—seeking to litigate the meaning of certain terms in the Client Agreement—would be bound to do so within the jurisdiction prescribed in the forum-selection clause.

Relatedly, Plaintiff's theory that it is an intended third-party beneficiary suggests that Plaintiff itself believes that it has a close relationship with Defendants and MultiPlan. The Court need not opine on whether Tennessee or Pennsylvania contract law governs the question of whether Plaintiff is a third-party beneficiary. Regardless of which state's law applies, both of these states' contract law require a close relationship between the parties to the contract and the non-signatory in order to render the non-signatory an intended third-party beneficiary.[12] The Court thus finds that Plaintiff does in fact have such a relationship for the purposes of determining whether to transfer the action. Not only is this finding perfectly consistent with Plaintiff's own theory of the case (*i.e.*, that it is an intended third-party beneficiary), but a contrary finding is largely non-

---

[12] Under Tennessee law, a plaintiff seeking to establish itself as an intended third-party beneficiary must demonstrate that the "contract was entered into, at least in part, for the [plaintiff's] benefit . . . or that one party to the contract assumed a duty that the other party owed to the third-party. . . ." *See Bonner v. United Parcel Service*, 2019 WL 3707916, at *4 (M.D. Tenn. Aug. 2, 2018) (internal quotation marks omitted). Likewise, under Pennsylvania contract law, a party is an intended third-party beneficiary if "both contracting parties [ ] expressed an intention that the third party be a beneficiary, and that intention must have affirmatively appeared in the contract itself." *See Republic Services of Penn., LLC v. Caribbean Operations, LLC*, 301 F. Supp. 3d 468, 476 (E.D. Penn. 2018) (internal quotation marks omitted).

sensical—namely, that Plaintiff could not have foreseen that it would be bound by the Client Agreement's forum-selection clause and yet that, as contended by Plaintiff, the parties intended Plaintiff to be a third-party beneficiary of the Client Agreement.

Plaintiff's additional attempts to persuade the Court that it should not be bound by the forum-selection clause are unavailing. Plaintiff first argues that the plain language of the forum-selection clause excludes Plaintiff because it uses the term "parties." (Doc. No. 50 at 16). Just as Judge Trauger rejected Regions Bank's identical argument regarding the forum-selection clause in that case, the Court here too finds Plaintiff's argument on this point ineffective. The Sixth Circuit has clarified that a non-party may be bound by the forum-selection clause where it is "foreseeable" that the non-party would be bound. *See Baker v. Leboeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1106 (6th Cir.1997) (finding that to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound"). Accordingly, the verbal limitation of a forum-selection clause to 'the parties' simply is not dispositive. Moreover, it would seem reasonable that an intended third-*party* beneficiary could be included in the term "parties." Rather than grappling with this issue, Plaintiff improperly (not to say intentionally) conflates the term "party" with the term "signatory," the latter of which would clearly exclude Plaintiff. The forum-selection clause, however, plainly references "parties," and Plaintiff contends that it is a third-*party* beneficiary. The plain language of the forum-selection clause therefore does not definitively resolve the issue of whether the clause binds Plaintiff.

Finally, relying on *Ford v. Syneron, Inc.*, 2009 WL 10674885 (E.D. Tenn. Feb. 19, 2009), Plaintiff argues that the forum-selection clause is "too vague to be enforced." (Doc. No. 50 at 16). In *Ford*, the court explained as follows:

> Here, the forum selection clause is sufficiently vague to render it unenforceable. The clause states that "the Customer consents to the exclusive

> jurisdiction and venue of any state or federal court located within the County of Cook in the State of Illinois." The language does not clearly indicate what claims the parties are consenting to litigate in Cook County, Illinois. The clause is poorly drafted because it does not specify whether the parties consent to jurisdiction for *any* claim related to the contract or whether jurisdiction is restricted to only breach of contract claims.

*Ford v. Syneron, Inc.*, No. 2:08–CV–272, 2009 WL 10674885, at *3 (E.D. Tenn. Feb. 19, 2009).

In Plaintiff's view, the language of the forum-selection clause in the Client Agreement likewise makes it unclear as to what claims are covered. Plaintiff's view is not frivolous; it is true that the clause does not explicitly say, for example, something broad like "all claims under this agreement," or, for that matter something narrower like "[X] claims" or "[Y] claims" shall be litigated in the Eastern District of Pennsylvania. The clause does state, however, that the

> Agreement will be governed by and interpreted in accordance with the laws of the Commonwealth of Pennsylvania, without regard to its conflict of laws provisions. Each party irrevocably accepts the exclusive Jurisdiction of the United States District Court for the Eastern District of Pennsylvania unless that Court declines or lacks jurisdiction. . . .

(Doc. No. 43–1). In the Court's view, the language that "the Agreement will be governed" cabins and specifies the scope of claims contemplated in the following sentence. In other words, it is apparent to the Court that the claims for which the parties "accept[ed] jurisdiction" are those arising under the Client Agreement. In contrast to Plaintiff's position, the Court therefore does not find the forum-selection so vague as to be rendered unenforceable. Furthermore, given that Plaintiff's claims are based on the terms of the Client Agreement, the Court is satisfied that they are subject to the forum-selection clause.

To the extent that *Ford* relies on the parties' failure to specify whether they consented to "jurisdiction for *any claim* related to the contract or whether jurisdiction is restricted to only breach of contract claims," the Court disagrees with its approach. "Even if a forum selection clause is ambiguous, it is not necessarily unenforceable." *Smart Commc'ns Collier, Inc. v. Lowndes Cnty.,*

*Mississippi*, 596 F. Supp. 3d 612, 622 n. 18 (N.D. Miss. 2022). It may well be in the interest of the parties to provide as much specificity as possible regarding what claims the forum-selection clause covers. Nevertheless, where as here the parties limit the scope of the forum-selection clause to claims involving the agreement itself, as opposed to including other claims that could arise between the parties, such as a tort claim unrelated to the agreement, the forum-selection clause is not too vague or ambiguous to be enforced. The Court finds that enforceability does not require the parties to go as far as to specify the precise kinds of contract-related claims (such as breach of contract) that the forum-selection clause covers. Thus, the Court rejects the level of specificity that *Ford* demands and instead concludes that "while the forum selection could have been more clear . . . it is not so vague or uncertain so as to be unenforceable." *Ellis v. C.R. England, Inc.*, No. CV H-21-1172, 2022 WL 379954, at *2 (S.D. Tex. Jan. 11, 2022), *report and recommendation adopted*, No. 4:21–CV–01172, 2022 WL 377408 (S.D. Tex. Feb. 8, 2022).

In summary, the Court is satisfied that Plaintiff is bound by the forum-selection clause of the contract under which it seeks to redeem the benefits of its alleged status. This finding is consistent with several courts to have considered the same issue. *See, e.g.*, *White Knight Yacht LLC v. Certain Lloyds at Lloyds London*, 407 F. Supp. 3d 931, 947 (S.D. Cal. 2019) ("A forum selection clause may be enforced against a non-party in at least two circumstances: (1) when the non-party is a third-party beneficiary of the contract with the clause, []and (2) when the non-party and the conduct at issue are "closely related" to the parties to the contract with the forum selection clause. . . ."); *Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 394 (S.D.N.Y. 2019) ("That a forum selection clause can be enforced against a non-signatory plaintiff who is a third-party beneficiary is consistent with the general law of contracts, which has long recognized

that third-party beneficiary status does not permit the avoidance of contractual provisions otherwise enforceable.") (internal quotation marks omitted).

Having found that Plaintiff is bound by the forum-selection clause, the Court next turns to whether transfer is appropriate under § 1404(a).

## 2. Transfer of venue is appropriate under § 1404(a)

The Court has discussed above, in the Standards for Motions to Transfer Venue section, the typical § 1404(a) analysis conducted when determining whether changing venue is appropriate. However, when there is an enforceable forum-selection clause (which the Court has determined there is), the calculus changes. The Court has previously explained:

> Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." With this statute, "Congress intended to give district courts the discretion to transfer cases on an individual basis by considering convenience and fairness." *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002). However, this discretion is limited significantly when a valid forum-selection clause governs the parties' dispute. In *Atlantic Marine Construction Company v. United States District Court for the Western District of Texas*, 134 S. Ct. 568 (2013), the Supreme Court explained that "[t]he calculus changes . . . when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum." The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* at 581 (internal citations omitted).

> *Atlantic Marine* directs that district courts may not consider the plaintiff's choice of forum or private interests when a valid forum-selection clause is present. *Id.* at 581–82. "As a consequence, a district court may consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* (internal citations omitted).

*Showhomes Franchise Corp. v. LEB Sols., LLC*, No. 3:17–CV–00508, 2017 WL 3674853, at *2
(M.D. Tenn. Aug. 24, 2017); *see also Hildebrand v. Optimal Mortg. Servs., LLC*, No. 3-16-0618,
2016 WL 3258418, at *2 (M.D. Tenn. June 14, 2016).

     *Atlantic Marine* requires a Court to make three adjustments to a § 1404 transfer analysis
when a valid and enforceable forum-selection clause is present:

> First, the plaintiff's choice of forum merits no weight. Rather, as the party
> defying the forum-selection clause, the plaintiff bears the burden of establishing
> that transfer to the forum for which the parties bargained is unwarranted. . . .
>
> Second, a court evaluating a defendant's § 1404(a) motion to transfer based
> on a forum-selection clause should not consider arguments about the parties'
> private interests. When parties agree to a forum-selection clause, they waive the
> right to challenge the preselected forum as inconvenient or less convenient for
> themselves or their witnesses, or for their pursuit of the litigation. . . .
>
> . . .
>
> Third, when a party bound by a forum-selection clause flouts its contractual
> obligation and files suit in a different forum, a § 1404(a) transfer of venue will not
> carry with it the original venue's choice-of-law rules—a factor that in some
> circumstances may affect public-interest considerations.

571 U.S. at 63–64.[13] This language in *Atlantic Marine* is phrased as if it applies only to the parties
that are bound by the forum-selection clause because they are signatories. Appropriately, the Third
Circuit has asked the question of "whether *Atlantic Marine* applies to a case in which one party is
a contracting party and the other, though not a signatory, is nevertheless bound by a forum selection
clause as an intended third-party beneficiary or closely related party." *In re McGraw-Hill*, 909
F.3d at 69. To this question, the Third Circuit provided the following answer:

> The *Atlantic Marine* modification applies to the § 1404(a) transfer inquiry if:
> (1) a non-signatory is bound by a forum selection clause under traditional contract
> law principles; (2) enforcement of the clause against him was foreseeable; and (3)

---

[13] However, the Court notes that in fairness to plaintiffs (like Plaintiff) that are bound by the forum-selection clause as third-party beneficiaries (or "closely related") and not as signatories, the chiding tone of *Atlantic Marine* (referring to the plaintiff as "defying" and "flout[ing]" the clause) probably is inapt for such plaintiffs.

> his claim falls within the scope of the clause. Indeed, *Atlantic Marine* recognized that foreseeability offsets "[w]hatever 'inconvenience' [a party] would suffer by being forced to litigate in the contractual forum." 571 U.S. at 64 (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17–18 (1972)).

*Id.* at 70. According to an opinion from the Third Circuit, the first factor in this test as a question of "whether the non-signatory is an intended third-party beneficiary of the contract or a closely-related party." *Liberty Surplus Ins. Corp. v. AXA Ins. Co.*, 788 F. App'x 850, 853 (3d Cir. 2019). The Court considers it appropriate to adopt the Third Circuit's test here. In light of the discussion above, the Court finds that all three requirements of the test are satisfied. Therefore, the modification from *Atlantic Marine* applies to the § 1404(a) transfer inquiry at hand. Accordingly, the Court declines to address Plaintiff's arguments on private factors related to transferability.

A party resisting enforcement of a forum-selection clause may, however, rely on "public interest" factors in support of its argument. "Factors relating to the public interest include the local interest in having localized disputes decided at home; the administrative difficulties resulting from court congestion; and the interest in having a trial of a diversity case in a forum at home with the law that will be applied." *Scott v. White*, 539 F. Supp. 3d 831, 846 (M.D. Tenn. 2021). Plaintiff argues that none of the public interest factors weigh in favor of transfer. Insofar as the public interest factors are concerned, however, it is *Plaintiff* that has the burden of establishing why the "public interest" factors weigh *against* transfer—in other words, it is not Defendants' burden (or the Court's duty) to establish why these factors favor transfer. Perhaps as a result of misapprehending its burden under § 1404(a), Plaintiff has set forth no arguments as to why the public interest factors weigh against transfer. The Court is therefore satisfied that transfer is appropriate in light of the strong policy and arguments favoring enforcement of the forum-selection clause and the lack of countervailing arguments set forth by Plaintiff.

<u>CONCLUSION</u>

For the reasons stated herein, the Motion at Doc. No. 40 is GRANTED insofar as the Court finds it appropriate to transfer this action to the Eastern District of Pennsylvania. The remainder of the Motion is DENIED as moot in light of the Court's decision to transfer the action, without prejudice to Defendants moving to dismiss in the transferee court. The Clerk is DIRECTED to TRANSFER this action to the Eastern District of Pennsylvania.


IT IS SO ORDERED.



*Eli Richardson*
_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE