IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANATOMIC AND CLINICAL | : | CIVIL ACTION |
| LABORATORY ASSOCIATES, P.C., et | : | |
| al. | : | No. 23-3834 |
| | : | |
| v. | : | |
| | : | |
| CIGNA HEALTH AND LIFE | : | |
| INSURANCE COMPANY, et al. | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                              **February 25, 2025**

This is a contract dispute arising out of an insurance company's decision to stop providing reimbursement for services it previously covered. Defendant MultiPlan, Inc. ("MultiPlan") is a "middleman" that creates and operates healthcare networks—connecting providers with insurers by contracting with each independently. Plaintiff Anatomic and Clinical Laboratory Associates, P.C. ("ACLA") is a healthcare provider in the MultiPlan Network. Defendant Cigna[1] is an insurer in the Network. ACLA alleges it provided certain healthcare services to Cigna members and was denied reimbursement. ACLA then sued MultiPlan and Cigna to recover payments to which ACLA claims it is entitled under the agreements among the parties. Both Defendants have moved to dismiss the case for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). MultiPlan's motion will be denied as to ACLA's breach of contract claim against MultiPlan and granted as to all other claims against MultiPlan. Cigna's motion will be denied as to third-party beneficiary breach of contract and unjust enrichment claims and granted as to all other claims against Cigna.

---

[1] There are five Cigna entities named as defendants and referred to collectively as "Cigna": Cigna Health and Life Insurance Company; Cigna Health Management, Inc.; Cigna Healthcare, Inc.; Connecticut General Life Insurance Co.; and Cigna Corporation.

## BACKGROUND

This case involves a third-party healthcare provider network.[2] Defendant MultiPlan, the third party, is a company that "operates and markets healthcare networks" by entering into written agreements with healthcare providers and "payors (*e.g.*, insurance companies, self-funded insurance plans, health maintenance organizations, and/or third-party administrators)." MultiPlan Mem. Supp. Mot. Dismiss 2, ECF No. 112. Plaintiff ACLA is a Tennessee-based provider group that provides pathology services to patients. Am. Compl. ¶ 4, ECF No. 94. ACLA is a provider in the MultiPlan Network pursuant to an agreement between it and MultiPlan. *Id*. ¶¶ 47-48. Cigna is an insurance company that is a payor in the MultiPlan Network pursuant to an agreement between Cigna and MultiPlan. *Id*. ¶¶ 47, 53-55. This case concerns Cigna's decision to stop paying ACLA for certain services covered under the MultiPlan Network.

---

[2]     Third-party provider network arrangements operate differently from traditional in-network and out-of-network arrangements. In simple terms, a provider is in-network with an insurer if there is a direct contract between the parties. In-network agreements require providers to provide healthcare services to the insurer's members in exchange for payment at a negotiated rate. In contrast, an out-of-network provider has no agreement with the insurer—so it is not limited to a pre-negotiated rate when billing the insurer and is not contractually guaranteed payment for services provided to the insurer's members. *See generally Thomas E. Birsic & Mary Beth F. Johnston*, *Health Care Institutions*, in *Business and Commercial Litigation in Federal Courts*, at § 104:28 (American Bar Association, 5th ed. 2024) (describing the difference between in-network and out-of-network providers). Third-party provider network arrangements involve a third party, neither an insurer nor a provider, who contract with providers and insurers separately. Generally, this arrangement requires providers to provide certain services at pre-negotiated rates to the third party's clients (i.e., the insurers) in exchange for reimbursement from the clients. Unlike in-network arrangements, there is no direct contract between the provider and the insurer in the provider network. And unlike out-of-network arrangements, there is an agreement or group of agreements that indirectly manage the provider-insurer relationship. *See generally Temple Univ. Hosp., Inc. v. Grp. Health, Inc.*, Civ. No. 05-102, 2006 WL 1997424, at *1-2 (E.D. Pa. July 13, 2006) (describing a type of provider network).

ACLA joined the MultiPlan Network by entering into the MPI Participating Professional Group Agreement ("MPI Agreement").[3] *Id*. ¶ 48. Pursuant to the MPI Agreement, ACLA agreed to provide "Covered Services"[4] to enrollees of MultiPlan's Clients (e.g., Cigna) in exchange for reimbursement by the Clients at the negotiated rates specified in the MPI Agreement ("MPI Rate"). *Id*. ¶¶ 50-51. MultiPlan agreed to require its Clients to pay ACLA the MPI Rate. *Id*. Under the MPI Agreement, ACLA's obligations are, in relevant part, as follows:

3.2 <u>Provision of Health Care Services</u>. Group and each Participating Professional will render medical and health care services in a manner which assures availability, adequacy, and continuity of care to Participants.

…

3.4 <u>Access</u>. Group and each Participating Professional will use reasonable efforts to accept all Participants for treatment in accordance with all terms and conditions of this Agreement. Group will ensure that medical and health care services are available to Participants 24 hours a day, 7 days a week. Group will provide at least ninety (90) days prior written notice to MPI [MultiPlan] whenever Group or any Participating Professional (i) closes or limits their respective practice; and (ii) re-opens or removes any limitation on a closed or limited practice.

…

3.9 <u>Network Participation and Requirements</u>. MPI may, in its sole discretion, include Group and each Participating Professional as a Network Provider in any or all Network(s). Group and each Participating Professional acknowledge that certain Programs offered by Clients accessing the Network (i) may not include a network option; or (ii) may cover Covered Services under Participant's Program at an in-Network or out-of-Network benefit level. Group and each Participating

---

[3]    ACLA failed to attach the MPI Agreement to the Amended Complaint, but MultiPlan attached it to its motion to dismiss. The Court may properly consider the agreement at the motion to dismiss stage because it is "integral" to the Amended Complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation and internal quotation marks omitted). The MPI Agreement is attached as "Exhibit 1-A" and appears on pages 20 to 36 of ECF No. 112 (ECF pagination).

[4]    "Covered Services" means "health care treatment and supplies rendered by a Network Provider [i.e., ACLA] and provided to a Participant for which a User [i.e., Cigna] is responsible for payment pursuant to the terms of a program." MPI Agreement 1, ECF No. 112.

Professional will comply with any Network specific requirements contained in Exhibit B and/or the administrative handbook(s).

…

3.11 <u>Administrative Handbooks</u>. Group and each Participating Professional will comply with the terms of the administrative handbook(s), including, without limitation, observing the protocols of the quality management and credentialing/recredentialing program(s). MPI may, in its sole discretion, modify the administrative handbook(s) from time to time and post such modifications to the MPI website. Group and each Participating Professional will periodically review the administrative handbook(s) on the MPI website for updates.

MPI Agreement 3-4, ECF No. 112. The administrative handbook[5] states "MultiPlan Clients and Users may elect not to access your Participating Professional Agreement, and in those situations, the terms of your agreement will not apply." Administrative Handbook 8, ECF No. 112. MultiPlan's obligations under the MPI Agreement are, in relevant part, as follows:

4.3 <u>Client Agreements</u>. MPI agrees that it has entered into agreements with Clients [i.e., Cigna] that specify that the right to access the Network, including access to the Contract rates, shall be subject to the terms of this Agreement.

…

4.5 <u>Identification</u>. MPI will require Clients to furnish Participants with a means of identifying themselves to Group as covered under a Program with access to the Network, such as (i) an MPI authorized name and/or logo on an identification card; (ii) an MPI phone number identifier; (iii) written notification by Client of MPI affiliation at time of benefits verification; (iv) an MPI authorized name and/or logo on the Explanation of Benefits; or (v) other means acceptable to MPI and Group.

…

4.7 <u>Use of Contract Rates</u>. MPI will require Clients and its Users to use the Contract Rates agreed to in this Agreement solely for Covered Services rendered to Participants covered under a Program which utilizes the Network.

---

[5]    The administrative handbook is attached to MultiPlan's motion to dismiss as "Exhibit 1-B," and appears on pages 37 to 73 of ECF No. 112 (ECF pagination). The Court may consider the administrative handbook because it is explicitly referenced in the MPI Agreement and discusses the "access" issue that is integral to the Amended Complaint. *See Schmidt*, 770 F.3d at 249.

MPI Agreement 5, ECF No. 112.

Cigna is part of the MultiPlan Network pursuant to its contract with MultiPlan, which consists of a Master Services Agreement ("MSA") and a Statement of Work ("SOW") (collectively, the "Client Agreement").[6] Am. Compl. ¶ 54, ECF No. 94. The Client Agreement allows Cigna the right to access the provider's services under the MultiPlan Network and reimburse the provider directly at the rates negotiated in the provider's MPI Agreement. *Id*. ¶¶ 54-57. The relevant portion of the SOW is as follows:

1.1 <u>Services</u>
Supplier [MultiPlan] shall provide the following Services in accordance with the terms and conditions of the Agreement to Company [Cigna]: The delivery of Complementary and Extender Network Services for claims are from providers that do not participate in a Company or an Affiliated Company participating provider network. It is understood Supplier's providers described herein whose claims receive Claim Prices under the is Agreement shall not be considered part of the Company's contracted provider network for purposes of those claims.

…

B. Company's Role

…

4. It is understood by Company for the Complementary and Extender Network services, a provider may not honor the Claim Price if Company does not comply with the applicable terms and conditions of the agreements between Supplier and providers. Upon request, Supplier will provide to Company the provider contract templates and make available the terms and conditions of provider agreements that enable Company to adjudicate claims. In such cases, Company agrees that Supplier has no liability under this SOW for the claims expense or the Claim Price that must be reversed to the extent caused by Company's failure to comply with such applicable terms and conditions.

…

---

[6]    ACLA failed to attach the Client Agreement to the Amended Complaint, but Cigna attached it to its motion to transfer or dismiss the original Complaint, as Exhibits 2 (MSA) and 3 (SOW). ECF No. 43. The Court may properly consider the agreement at this stage because it is "integral" to the complaint. *Schmidt*, 770 F.3d at 249 (3d Cir. 2014).

6. In order to qualify for the Claim Price under the Complementary and Extender Network Services, Company will pay or arrange to pay provider in accordance with the terms of the contract between Supplier and provider or the Network Service Vendor, as applicable, subject to any applicable state and federal law regarding timely payment of claims.

7. Notwithstanding any other provision of this Agreement and SOW, Company shall have the right to pay claims from providers in accordance with the applicable benefit plans in lieu of accessing the Claim Price made available by Supplier.

Statement of Work 1-2, ECF No. 43-2. The Client Agreement also states that "[e]xcept as expressly stated, this Agreement will not confer any rights or benefits upon any third party." Master Services Agreement ¶ 13.4, ECF No. 43-1.

Under the MultiPlan Network, ACLA performed the professional component of clinical pathology services ("PCCP services"). Am. Compl. ¶¶ 55-60, ECF No. 94. PCCP services are clinical laboratory oversight services that allow the laboratories to operate and perform clinical tests.[7] *Id*. at 2. These services are a "Covered Service" under the MPI Agreement. *Id*. ¶¶ 50, 71. For "years," Cigna reimbursed ACLA for PCCP services at the MPI Rate. *Id*. ¶ 60. To obtain reimbursement for PCCP services performed for the benefit of Cigna enrollees, ACLA would submit reimbursement claims using the corresponding Current Procedural Terminology ("CPT")[8]

---

[7]     According to ACLA, these services include: "ensuring that tests, examinations, and procedures are properly performed, recorded, and reported; interacting with members of the medical staff regarding issues of laboratory operations, quality, and test availability; designating protocols and establishing parameters for performances of clinical testing; recommending appropriate follow-up diagnostic tests, when appropriate; supervising laboratory technicians and advising technicians regarding aberrant results; selecting, evaluating, and validating test methodologies; [and] directing, performing, and evaluating quality assurance and control procedures …" Am. Compl. 2 n.2, ECF No. 94.

[8]     CPT codes are a "listing of descriptive terms and identifying codes for reporting medical services and procedures performed by physicians" that was developed by the American Medical Association ("AMA"). *Current Procedural Terminology (CPT)*, Center for Medicare & Medicaid Services (Apr. 2023), https://mmshub.cms.gov/measure-lifecycle/measure-specification/specify-code/CPT [https://perma.cc/YYJ2-V75A].The purpose of the CPT coding system is to "provide a uniform language that accurately describes medical, surgical, and diagnostic services, and thereby

code with "Modifier 26" appended to indicate it was billing for only the professional component of the service, and Cigna would reimburse ACLA directly for the PCCP services.[9] *See id*. ¶¶ 22-25, 55-60. In the fall of 2021, however, Cigna informed providers that, effective November 2021, it would deny reimbursement claims for PCCP services submitted with Modifier 26 "when the facility [i.e., the hospital] is contractually responsible for laboratory management and oversight services" (the "Denial Notice"). *Id*. ¶ 64. Cigna advised providers that it would pay hospitals a "global fee" for the clinical pathology services provided—i.e., a fee that includes both the professional and the technical component for the underlying services provided. *Id*. ¶ 66.  But according to ACLA, payment of a global fee is appropriate only when the hospital is entitled to bill and receive payment for both the professional and technical component of the underlying service.[10] *Id*. ACLA alleges that is not the case here because its pathologists are not employees of the hospitals. *Id*.

After receiving notice of Cigna's change in policy, ACLA objected and attempted to negotiate with Cigna to no avail. *Id*. at 4. In October or November 2021, Cigna began denying payment to ACLA for PCCP reimbursement claims, while continuing to pay ACLA's other reimbursement claims at the MPI Rate. *Id*. ¶¶ 61, 68.  Cigna claims it has reimbursed the hospitals for PCCP services and will not separately reimburse certain pathology groups like ACLA. *Id*. ¶

---

provides an effective means for reliable nationwide communication among physicians, patients, and third parties." *Id.*

[9]      Oral Arg. Audio at 1:01:00-1:02:20, ECF No. 137.

[10]      For example, ACLA alleges payment of a global fee would be permitted "[w]hen a facility/institution/physician owns the equipment, purchases the supplies and employs a technician to perform the procedure as well as a physician to interpret the results." Am. Compl. ¶ 66, ECF No. 94.

70. But ACLA denies that any of the hospitals it staffs have been separately reimbursed by Cigna for PCCP services provided by ACLA. *Id*. In the spring of 2022, Cigna announced another policy change, stating PCCP services would be reimbursed at a flat rate of $5 per test, which Cigna considers to be the market value of the PCCP services. *Id*. ¶¶ 85, 87. After the announcement, however, Cigna continued to deny ACLA payment for PCCP services and has not paid ACLA $5 per test—nor would ACLA accept payment in this amount.[11]  *Id*. ¶ 91.

ACLA alleges MultiPlan conspired with Cigna to breach its obligations to ACLA. *Id*. ¶¶ 100-02. According to ACLA, under the MPI Agreement, MultiPlan has an obligation to require Clients (like Cigna) to use the MPI Rate specified in the agreement, but instead MultiPlan acquiesced to Cigna's position that the Client Agreement gives Cigna the freedom not to pay the contract rates. *Id*.

Based on the foregoing, ACLA filed this action against MultiPlan and Cigna.[12] The case was originally filed in the Middle District of Tennessee but was transferred to this Court in October 2023 based on a forum selection clause in the Client Agreement. ECF No. 89. ACLA filed an Amended Complaint in December 2023, ACLA brings claims against Cigna for breach of contract as a third-party beneficiary of the Client Agreement (Count III), breach of implied-in-fact contract (Count V), breach of covenant of good faith and fair dealing (Count VI), unjust enrichment (Count VIII), declaratory judgment (Count IX), and injunctive relief (Count X). Am. Compl. 28-30, 32-37, 39-41, ECF No. 94. ACLA also brings claims against MultiPlan for breach of contract (Count

---

[11]    In its motion to dismiss, Cigna notes it had not yet implemented the new policy when ACLA filed this lawsuit. Cigna Mem. Supp. Mot. Dismiss 4, ECF No. 113-1.

[12]    This action was filed by ACLA and a second plaintiff, Cumberland Pathology Associates, PLLC, a Tennessee-based pathology group. Cumberland's claims have been stayed pending arbitration. ECF No. 39.

IV), breach of implied-in-fact contract (Count V), breach of covenant of good faith and fair dealing (Count VII), and declaratory judgment (Count XI). *Id*. at 30-35, 37-39, 41-42. Both Defendants moved to dismiss the Amended Complaint in February 2024. ECF Nos. 112, 113. The Court heard oral argument on the motions on October 31, 2024. ECF No. 136.

**STANDARD OF REVIEW**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must assume the truth of all well-pleaded factual allegations, construe the facts and the reasonable inferences therefrom "in a light most favorable to the [plaintiff,]" and "determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Labs., LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 679). The court may also consider "exhibits attached to the complaint," "matters of public record," and documents "integral to or explicitly relied upon in the complaint" at the motion to dismiss stage, without converting the motion into one for summary judgment. *Schmidt*, 770 F.3d at 249 (emphasis, citation, and internal quotation marks omitted).

**DISCUSSION**

### A. MultiPlan's Motion to Dismiss

MultiPlan moves to dismiss ACLA's claims for breach of contract (Count IV), breach of implied-in-fact contract (Count V), breach of covenant of good faith and fair dealing (Count VII), and declaratory judgment (Count XI) against it for failure to state a claim. The motion will be denied as to the breach of contract claim and granted as to all other claims.

At the outset, the motion will be granted as to the claim for breach of the covenant of good faith and fair dealing (Count VII) because this is not an independent cause of action under Tennessee law.[13] *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 572 (6th Cir. 2003) (holding "[b]reach of the implied covenant of good faith and fair dealing is not an independent basis for relief" under Tennessee law); *Brown v. Bd. of Educ. of Shelby Cnty. Schs.*, 47 F. Supp. 3d 665, 687 (W.D. Tenn. 2014) (same). The motion will also be granted as to the declaratory judgment claim (Count XI) because it is duplicative of the breach of contract claim.[14] *Siegel v. Goldstein*, 657 F. Supp. 3d 646, 662 (E.D. Pa. 2023) (finding that dismissal of declaratory judgment claim is warranted when it "duplicate[s] other claims").

As to the breach of contract claim, ACLA asserts MultiPlan breached the MPI Agreement by failing to require Cigna to compensate ACLA for PCCP services pursuant to the terms of the MPI Agreement. MultiPlan argues its duty to require Cigna to compensate ACLA at the MPI Rate is only triggered if Cigna "accesses" the MultiPlan Network. MultiPlan Mem. Supp. Mot. Dismiss 8-11, ECF No. 112. MultiPlan asserts Cigna stopped accessing the MultiPlan Network when

---

[13]    The parties agree Tennessee law applies to ACLA's contract-based claims against MultiPlan because the MPI Agreement is governed by Tennessee law.

[14]    Federal law governs the declaratory judgment claim because it a remedy set forth by the Declaratory Judgment Act, 28 U.S.C. § 2201. *Aaron Enters., Inc. v. Fed. Ins. Co.*, 415 F. Supp. 3d 595, 599-600 (E.D. Pa. 2019).

Cigna's Denial Notice became effective in November 2021.[15] *See id*. Thus, MultiPlan owed no such duty to ACLA under the MPI Agreement.

The interpretation of the contract is a question of law for the Court to decide. *Bridgestone Am.'s, Inc. v. Int'l Bus. Machines Corp.*, 172 F. Supp. 3d 1007, 1019 (M.D. Tenn. 2016). To allege a breach of contract, a plaintiff must plead (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach. *Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 890 (M.D. Tenn. 2018). Under Tennessee law, the "central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002).

The first step in interpreting a contract is to determine whether the whether the language of the contract is ambiguous. *Am. Reliable Ins. Co. v. Addington*, 644 F. Supp. 3d 453, 457 (M.D. Tenn. 2022). A contract is ambiguous if more than one reasonable interpretation exists. *Int'l Paper Co. v. Beazley Ins. Co.*, 731 F. Supp. 3d 1013, 1044 (W.D. Tenn. 2024) (citing *Fisher v. Revell*, 343 S.W.3d 776, 780 (Tenn. Ct. App. 2009)). If the language is ambiguous, a court may examine extrinsic evidence to determine the intent of the parties, and the ambiguity is construed against the drafter. *Waste Servs. of Decatur, LLC v. Decatur Cnty., Tenn.*, 367 F. Supp. 3d 792, 807 (W.D. Tenn. 2019); *Crye-Leike, Inc. v. Carver*, 415 S.W.3d 808, 816 (Tenn. Ct. App. 2011) ("Tennessee courts adhere to the general rule that ambiguities in a contract are construed against the drafter."). However, if the contract is clear and unambiguous, the plain meaning of the terms controls. *Action Chiropractic Clinic, LLC v. Hyler*, 467 S.W.3d 409, 412 (Tenn. 2015).

---

[15]    Oral Arg. Audio at 2:00:00-2:04:55, ECF No. 137.

At this stage, the Court finds the MPI Agreement is ambiguous because it contains language supporting both parties' interpretations of MultiPlan's obligations. For example, section 4.7 of the MPI Agreement supports ACLA's interpretation because it provides that MultiPlan "will require" Cigna to reimburse ACLA at the "Contracted Rate" for "Covered Services" under the MultiPlan Network. MPI Agreement 5, ECF No. 112. ACLA's interpretation that MultiPlan's obligation is triggered when ACLA provides Covered Services through the MultiPlan Network is reasonable based on this language. ACLA has sufficiently alleged that it provided PCCP services to Cigna patients through the MultiPlan Network, and MultiPlan failed to "require" Cigna to pay the MPI Rate for the PCCP services.  In contrast, the permissive language of section 3.9 of the MPI Agreement supports MultiPlan's interpretation that its obligation depends on Cigna "accessing" the Network.  Section 3.9 provides, in relevant part, that ACLA "acknowledge[s] that certain Programs offered by Clients accessing the Network … may cover Covered Services under Participant's Program at an in-Network or out-of-Network benefit level. Group [ACLA] and each Participating Professional will comply with any Network specific requirements contained in Exhibit B and/or the administrative handbook(s)." *Id.* at 4. The administrative handbook, in turn, states that Cigna "may elect not to access" the MPI Agreement and, in such case, the MPI Agreement "will not apply." Administrative Handbook 8, ECF No. 112-2. However, neither the MPI Agreement nor the handbook defines what it means for Cigna to "access" the MultiPlan Network.[16] ACLA has sufficiently alleged that Cigna "accessed" the Network based on the parties' course of dealing. Further, at this stage, the ambiguity is properly resolved during fact discovery

---

[16]    Based on oral argument, the Court understands MultiPlan to be interpreting "access" to depend on whether Cigna chooses to pay the MPI Rate after ACLA has already performed the service, but neither the MPI Agreement nor administrative handbook clearly supports that interpretation.

and is construed against MultiPlan, which drafted the MPI Agreement. *See ChampionX, LLC v. Resonance Sys., Inc.*, 726 F. Supp. 3d 786, 821 (E.D. Tenn. 2024) (stating "when a contract is ambiguous, a court should not interpret the contract at the motion to dismiss stage" (internal quotation marks and citation omitted)). Accordingly, the motion to dismiss will be denied as to the breach of contract claim (Count IV).

However, the motion will be granted as to the breach of implied-in-fact contract claim (Count V) because the MPI Agreement is a valid and enforceable contract between MultiPlan and ACLA on the same subject matter. *Ingram Barge Co., LLC v. Bunge N. Am., Inc.*, 455 F. Supp. 3d 558, 577 (M.D. Tenn. 2020) ("A contract cannot be implied, however, where a valid contract exists on the same subject matter") (quoting *Jaffe v. Bolton*, 817 S.W.2d 19, 26 (Tenn. Ct. App. 1991)); *Nissan N. Am., Inc. v. Cont'l Auto. Sys., Inc.*, 503 F. Supp. 3d 555 (M.D. Tenn. 2020) (same).

### B.  Cigna's Motion to Dismiss

Cigna also moves to dismiss all claims against it: ACLA's claims for breach of contract as a third-party beneficiary of the Client Agreement (Count III), breach of implied-in-fact contract (Count V), breach of covenant of good faith and fair dealing (Count VI), unjust enrichment (Count VIII), declaratory judgment (Count IX), and injunctive relief (Count X). The motion will be granted as to all claims except the third-party beneficiary breach of contract and unjust enrichment claims.

At the outset, the motion will be granted as unopposed as to the breach of covenant of good faith and fair dealing and injunctive relief claims (Counts VI and X).[17] The motion will also be granted as to the declaratory judgment claim (Count IX) because it is duplicative of the breach of contract claim. *Siegel*, 657 F. Supp. 3d at 662.

---

[17]    *See* ACLA Opp'n Cigna Mot. Dismiss 4 n.6, ECF No. 120.

As to the remaining claims, Cigna initially raises two global issues. First, Cigna argues the Amended Complaint should be dismissed for failure to comply with Federal Rule of Civil Procedure 8 because it contains no information about the individual reimbursement claims on which ACLA seeks recovery. Alternatively, Cigna seeks a more definite statement under Rule 12(e). Second, Cigna argues ACLA's claims are preempted by the Employee Retirement Income Security Act of 1974 (ERISA) to the extent they involve Cigna's failure to pay claims under health plans subject to ERISA. Both arguments fail.

A pleading is sufficient under Rule 8 if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading "need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). The Amended Complaint contains sufficient information to give Cigna notice of the reimbursement claims at issue. ACLA asserts the breach of contract claim is based on Cigna's denial of reimbursement claims for PCCP services submitted with Modifier 26 that were denied starting "[i]n or about October or November 2021" on the basis of Cigna's Denial Notice. Am. Compl. ¶¶ 63-68, ECF No. 94. These are claims ACLA submitted to Cigna, which Cigna denied for a specific, identifiable reason. This information is adequate to put Cigna on notice about the claims at issue. Accordingly, the Rule 8 argument lacks merit.

The Court also rejects Cigna's ERISA preemption argument. Section 514(a) of ERISA preempts state law claims that "relate to" an ERISA plan. 29 U.S.C. § 1144(a); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990). A state law claim "relates to an ERISA plan if it has a connection with or reference to such a plan." *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001) (internal quotation marks and citation omitted). To determine whether ERISA preempts

14

the claims, the Court must find: (1) ACLA could have brought the claims under ERISA, and (2) no other independent duty supports the claims. *Pascack Valley Hosp. v. Loc. 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004).

ACLA asserts its claims against Cigna are not preempted because they are based on an independent contractual relationship with Cigna as a result of the Multiplan Network agreements. ACLA's pleading makes clear that the breach of contract claims against Cigna are for reimbursement claims for PCCP services provided pursuant to the MultiPlan Network that (1) Cigna denied reimbursement starting in October or November 2021, (2) Cigna stated the basis for the denial was the Denial Notice and/or Modifier 26, and (3) ACLA expressly pleads it does not seek benefits under ERISA. *See Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 230-35 (3d Cir. 2020) (finding that provider plausibly stated breach of contract claims that were not preempted by ERISA because of alleged contractual relationship for payor to pay provider for alleged services). As pleaded, Cigna reimbursed ACLA for these same services, pursuant to the MPI Rate, in the years leading up to implementation of the Denial Notice. Viewing the allegations in light most favorable to ACLA, the claims do not require the interpretation of ERISA plans because the plans are not "critical factor[s] in establishing liability."[18] *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990).

Turning to the breach of contract claims, because there is no direct contract between ACLA and Cigna, ACLA relies on two alternative theories: (1) ACLA is a third-party beneficiary of the

---

[18]    To the extent some of ACLA's reimbursement claims may be covered by ERISA, that is a fact-intensive issue to be resolved during discovery. *See Plastic Surgery Ctr., P.A.*, 967 F.3d at 234 (holding "reference to an ERISA plan in the calculation of damages" does not trigger preemption if all that is required is a cursory examination of the plan).

of the Client Agreement between Cigna and Multiplan, and (2) ACLA, MultiPlan, and Cigna have an implied-in-fact contract.

To attain third-party beneficiary status under Pennsylvania law, either (1) both parties to the contract must have affirmatively expressed an intention in the contract itself that the third party be a beneficiary, or (2) the circumstances must be so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties and the performance must satisfy an obligation of the promisee to the beneficiary.[19] *Bunis v. Masha Mobile Moving & Storage, LCC*, 674 F. Supp. 3d 186, 194 (E.D. Pa. 2023); *M.S. ex rel. Michelle M.S. v. Cedar Bridge Mil. Acad.*, 904 F. Supp. 2d 399, 412 (M.D. Pa. 2012). However, "a contract that expressly disclaims intent to create third-party beneficiaries" is generally effective in excluding third parties from invoking rights in the agreement. *Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 527-28 (E.D. Pa. 2011); *see also In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, Civ. No. 23-1236, 2024 WL 4160349, at *7 (E.D. Pa. Sept. 11, 2024) (finding "parties to a contract are permitted to expressly disclaim the existence of intended third-party beneficiaries" under Pennsylvania law).

ACLA argues it is an intended third-party beneficiary of the Client Agreement because the Client Agreement requires Cigna to directly pay providers for services at the MPI Rate and Cigna cannot perform its duties under the agreement without providing direct benefits to MultiPlan Network providers, such as ACLA. ACLA Opp'n Cigna Mot. Dismiss 9-10, ECF No. 120. Cigna disputes this, noting the Client Agreement expressly disclaims conferring any third-party beneficiary rights, and that Cigna only has obligations to MultiPlan Network providers if it

---

[19]    The parties agree that Pennsylvania law applies to ACLA third-party beneficiary claim because it requires construction of the Client Agreement, which has a choice-of-law provision specifying that Pennsylvania law governs. *See Master Services Agreement* ¶ 13.7, ECF No. 43-1.

accesses the MultiPlan Network. Cigna Mem. Supp. Mot. Dismiss 9-10, ECF No. 113-1; Cigna Reply 4-5, ECF No. 120. The Court agrees that Cigna has obligations to MultiPlan Network providers if it accesses the network. At this stage, however, ACLA has plausibly alleged that Cigna accessed the Network based on the parties' course of dealing. According to ACLA, it provided PCCP services to Cigna patients under the MultiPlan Network, as it had done for years prior to October or November 2021. The only difference is that Cigna stopped paying for the services starting in October or November 2021. While Cigna offers a different interpretation, the Client Agreement does not clarify what "access" means.[20] *See* Client Agreement, ECF Nos. 43-1 and 43-2. The Client Agreement is therefore ambiguous because while it disclaims third-party beneficiary rights in the MSA ("[e]xcept as expressly stated, this Agreement will not confer any rights or benefits upon any third party"), it confers such rights in the SOW ("[Cigna] will pay or arrange to pay provider in accordance with the terms of the contract between [MultiPlan] and provider or the Network Service Vendor"). *See Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 93 (3d Cir. 2001) (holding a contract is ambiguous if "it is reasonably or fairly susceptible of different constructions"); *see also Chambers v. Chesapeake Appalachia, L.L.C.*, 359 F. Supp. 3d 268, 281 (M.D. Pa. 2019) ("Courts are better positioned to tease out ambiguities on summary judgment."). Viewing the allegations in light most favorable to ACLA, the Amended Complaint plausibly suggests Cigna accessed the MultiPlan Network, triggering its obligation to pay ACLA for PCCP services at the MPI Rate. Because Cigna failed to pay ACLA, Cigna's motion will be denied as to this claim.

---

[20]    Based on the briefing and oral argument, the Court understands that Cigna, like MultiPlan, interprets "access" as depending on whether Cigna chooses to pay the MPI rate after ACLA has already performed the service. This definition, however, does not appear in the Client Agreement, nor is it the only reasonable interpretation of the agreement.

ACLA next argues Cigna breached a valid, implied-in-fact contract between the parties.[21] Under Tennessee law, an implied-in-fact contract can "arise under circumstances which, according to the ordinary course of dealing and common understanding ... show a mutual intention to contract." *Nissan N. Am., Inc. v. Cont'l Auto. Sys., Inc.*, 503 F. Supp. 3d 555, 566 (M.D. Tenn. 2020) (quoting *Metro. Gov't of Nashville & Davidson Cnty. v. Cigna Healthcare of Tenn., Inc.*, 195 S.W.3d 28, 32 (Tenn. Ct. App. 2005)). For an implied-in-fact contract to be enforceable, it "must be sufficiently definite" and supported by mutual assent and consideration. *PB&J Towing Serv., I&II, LLC v. Hines*, 487 F. Supp. 3d 695, 704 (W.D. Tenn. 2020) (internal quotation marks and citation omitted); *see also AMISUB (SFH), Inc. v. Cigna Health & Life Ins. Co.*, 681 F. Supp. 3d 842, 853 (W.D. Tenn. 2023). There must be a "benefit conferred upon the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Layne Christensen Co. v. City of Franklin, Tenn.*, 449 F. Supp. 3d 748, 757 (M.D. Tenn. 2020). However, an implied-in-fact contract is terminable at will by either party with reasonable notice. *First Flight Assocs., Inc. v. Pro. Golf Co.*, 527 F.2d 931, 935 (6th Cir. 1975) ("Contracts silent on time of termination are generally terminable at will by either party with reasonable notice"); *McReynolds v. Cherokee Ins. Co.*, 896 S.W.2d 777, 779 (Tenn. Ct. App. 1994).

This claim will be dismissed because the facts alleged show Cigna properly terminated any implied-in-fact contract that may have existed between the parties. For years, ACLA provided PCCP services to Cigna patients under the MultiPlan Network and received reimbursement from

---

[21] The parties agree that Tennessee law applies to this claim because it is based on the parties' alleged conduct. The alleged services were performed in Tennessee.

Cigna at the MPI Rate. The circumstances of this relationship demonstrate a common understanding between the parties based on a defined exchange of services and payments. ACLA's services were limited to the services outlined in the MPI Agreement and Cigna's reimbursement reflected the rates set forth in that Agreement. Because any implied-in-fact contract between the parties did not have a termination date, however, Cigna could terminate it, which it did by issuing its Denial Notice. According to the Amended Complaint, ACLA received notice of the Denial Notice in the "fall of 2021," before it became effective. Am. Compl. ¶ 64, ECF No. 94. In fact, before the policy was implemented, ACLA tried to negotiate with Cigna regarding the Denial Notice and failed. ACLA notes that after the Denial Notice was issued, Cigna continued to pay for Covered Services other than PCCP services at the MPI Rate, but this, at best, shows the parties potentially assented to a new implied contract that did not include the PCCP services. *See Bristol Anesthesia Servs., P.C. v. Carilion Clinic Medicare Res., LLC*, Civ. No. 2:15-17, 2018 WL 1512932, at *6-7 (E.D. Tenn. Mar. 26, 2018) (finding that an insurer's unilateral change in reimbursement rate terminated an implied-in-fact contract at the original rate and potentially "manifested mutual assent enough to find that a second implied-in-fact contract was created between the parties," before ultimately ruling that no such second contract was created). The Amended Complaint makes clear that the implied-in-fact contract for the PCCP services was terminated by Cigna. Accordingly, Cigna's motion will be granted as to this claim.

Finally, in the alternative, ACLA brings a claim for unjust enrichment against Cigna for its failure to pay ACLA for PCCP services.[22] To recover for unjust enrichment under Tennessee law,

---

[22] The parties agree that Tennessee law applies to this claim because it is based on the parties' alleged conduct. The alleged PCCP services were performed in Tennessee. Further, at this stage, ACLA can pursue the unjust enrichment claim as an alternative to the third-party beneficiary claim. *Iron Horse Energy Servs., Inc. v. S. Concrete Prods., Inc.*, 443 F. Supp. 3d 952, 958 (W.D.

a plaintiff must establish "(1) a benefit conferred upon a defendant by a plaintiff, (2) appreciation by the defendant of such benefit, and (3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain benefit without payment of the value thereof." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (internal quotation marks and citation omitted). "The Tennessee Supreme Court has noted that the most significant requirement in a claim for unjust enrichment is that the enrichment to the defendant be unjust." *Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 905 (M.D. Tenn. 2018) (internal quotation marks and citation omitted). ACLA alleges it provided PCCP services for the benefit of Cigna's enrollees as required by the MultiPlan Network agreements, Cigna received reimbursement claims from ACLA for the PCCP services, and Cigna refused to pay for the PCCP services. Am. Compl. ¶¶ 211-218, ECF No. 94. Further, ACLA alleges the MPI Agreement prohibits it from seeking payments directly from Cigna enrollees. MPI Agreement 6, ECF No. 112 ([N]either Group [ACLA] nor any Participating Professional will bill or require any Participant [Cigna enrollee] to tender any payment with respect to Covered Services."). Accordingly, ACLA has sufficiently alleged an unjust enrichment claim against Cigna. *Compare River Park Hosp., Inc. v. BlueCross BlueShield of Tenn., Inc.*, 173 S.W.3d 43, 58-60 (Tenn. Ct. App. 2002) (affirming trial court's finding that insurer was unjustly enriched by provider's provision of services to insurer's enrollees), *with HCA Health Servs. of Tenn., Inc. v. Bluecross Blueshield of Tenn., Inc.*, Civ. No 2014-01869, 2016 WL 3357180, at *10 (Tenn. Ct. App. June 9, 2016) (affirming summary judgment dismissal of an unjust enrichment claim, in part, because the provider "can seek payment directly from the [insurer's enrollees] it has treated.").

---

Tenn. 2020) (finding the plaintiff is allowed to plead an unjust enrichment claim in the alternative where there is a dispute as to the existence and terms of any contract between the parties)

**CONCLUSION**

In sum, MultiPlan's motion will be denied as to the breach of contract claim and granted as to all other claims. Cigna's motion will be denied as to the third-party beneficiary breach of contract and unjust enrichment claims and granted as to all other claims.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.